19 F.3d 34
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Edward F. WOLENSKI, Plaintiff-Appellant,
v.
MANVILLE CORPORATION, Defendant-Appellee.
 No. 93-1045.
 United States Court of Appeals, Tenth Circuit.
 March 17, 1994.
 
 1
 Before KELLY and BARRETT, Circuit Judges and ROGERS, District Judge.*
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 ROGERS, District Judge.
 
 
 4
 This is an age discrimination action brought by Edward F. Wolenski pursuant to the Age Discrimination in Employment Act, 29 U.S.C. Secs. 621-634 (ADEA). Wolenski claimed that he was terminated by his employer, Manville Corporation, because of his age. The district court granted summary judgment to Manville, finding that Wolenski had failed to raise a genuine issue of fact whether Manville's articulated reasons for his termination were a pretext for discrimination. For the reasons stated in this opinion, we affirm the district court's opinion.
 
 I.
 
 5
 Manville develops, manufactures and sells automotive and building materials. In 1990, Manville determined that cuts in its budget were necessary due to a decline in its business. In an effort to cut costs, Manville restructured its operation and eliminated some positions. On January 31, 1991, Wolenski was terminated from his position as research technologist. At the time of his termination, Wolenski was 56 years old.
 
 
 6
 Prior to the move to cut costs, Manville employed seven research technologists, including Wolenski, in the corporate research and development group (R & D group). A research technologist is a technician who works with one or more engineers on a research and development project. The Senior Director of the group was Dr. T.W. Michelsen. Manville decided to transfer one project, involving polyimide foams, from the corporate R & D group to Manville's Mechanical Insulation Systems Division. Two research technologists, who were younger than Wolenski, were transferred for continued work on this project. These two were selected because they had been working on the project since it began. Wolenski, who also had worked on this project, admitted that he did not know as much about this project as the two who were transferred.
 
 
 7
 The transfer decision left five research technologists with the corporate R & D group. Positions were available for only three of them. Dr. Michelsen was given the task of selecting the three individuals for the remaining projects. For each project, Dr. Michelsen selected an individual who had extensive experience working on the particular project. Two of the individuals chosen, Robert Hughes and Isidro Bastidas, were younger than Wolenski, but the third individual, Mario Tocci, was 57 years old at the time and was the oldest of the research technologists.
 
 II.
 
 8
 Manville defended its action of terminating Wolenski by asserting that it was required by economic forces to initiate a reduction-in-force (RIF). Manville further contended that relevant experience, and not age, was the determining factor in its decision to retain Hughes, Bastidas and Tocci, and terminate Wolenski. Wolenski did not dispute the need for a RIF, but argued he should not have been selected for termination, and his selection for termination constituted age discrimination.
 
 
 9
 The district court doubted that Wolenski had established a prima facie case of discrimination but concluded that Wolenski had failed to raise a genuine issue of fact regarding pretext.
 
 
 10
 On appeal, Wolenski contends that the evidence before the district court demonstrated that he was qualified or more qualified for the position that Hughes received. He also argues that he demonstrated pretext by showing that the average age of the corporate R & D group dropped ten years following the RIF. He further contends that the district court improperly limited the scope of the examination by restricting its analysis to only his immediate work area. He asserts that Manville had a policy of considering employees for positions elsewhere in the company.
 
 III.
 
 11
 Cases brought under the ADEA are subject to the same indirect method of proof used in Title VII cases alleging discriminatory treatment. Schwager v. Sun Oil Co., 591 F.2d 58, 60 (10th Cir.1979). This method of proof consists of (1) plaintiff's prima facie case of discrimination, (2) the defendant's legitimate justification, and (3) the plaintiff's rebuttal showing of pretext and/or improper motivation. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 801-04 (1973); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253-56 (1981).
 
 
 12
 The court shall turn immediately to the issue of whether Wolenski presented sufficient evidence of a genuine issue of fact as to pretext. Although expressing some doubt about the Wolenski's ability to prove a prima facie case, the district court based its ruling on the grounds that Manville had advanced a facially nondiscriminatory explanation for the action taken against Wolenski and Wolenski had failed to raise a triable issue of fact as to whether that reason was actually a pretext for discrimination.
 
 
 13
 To avoid summary judgment in an employment discrimination action after an employer has offered a legitimate nondiscriminatory reason for the action taken, a plaintiff must produce specific facts to show a genuine issue of fact as to pretext. Branson v. Price River Coal Co., 853 F.2d 768, 771-72 (10th Cir.1988). Mere assertions and conjecture are not enough to survive summary judgment. Id. In addition, it is not enough for plaintiff that the employer's proffered reasons for termination are a pretext. He must also show that those reasons are a pretext "for discrimination." EEOC v. Flasher Co., Inc., 986 F.2d 1312, 1321 (10th Cir.1993). Thus, a plaintiff is required to do more than prove that the articulated reasons for choosing him for termination are unworthy of belief. He is required to prove that "the reason for their lack of credence [is] the underlying presence of proscribed discrimination." Id. As stated by the court in Moore v. Eli Lilly & Co., 990 F.2d 812, 815-16 (5th Cir.1993):
 
 
 14
 [P]laintiff's summary judgment proof must consist of more than "a mere refutation of the employer's legitimate nondiscriminatory reason." To demonstrate pretext, the plaintiff must do more than "cast doubt on whether [the employer] had just cause for its decision"; he or she must "show that a reasonable factfinder could conclude that [the employer's] reason[s] [is] worthy of credence." Specifically, "[t]here must be some proof that age motivated the employer's action, otherwise the law has been converted from one preventing discrimination because of age to one ensuring dismissals only for just cause to all people over 40." (footnote citations omitted).
 
 
 15
 Also see St. Mary's Honor Center v. Hicks, --- U.S. ----, 113 S.Ct. 2742 (1993) (success in a race discrimination suit requires a "finding that the employer's action was the product of unlawful discrimination" and not merely "the much different (and much lesser) finding that the employer's explanation of it was not believable"). In this case, Wolenski had to prove both that the reason offered by Manville for his termination was pretextual and that the reason for the pretext was to hide illegal age discrimination.
 
 IV.
 
 16
 The evidence in the record fails to provide any support for Wolenski's arguments on appeal. The evidence suggests that the individuals retained by Manville were more qualified for the remaining projects than Wolenski. Wolenski admitted that the two individuals transferred with the polyimide foams project had more knowledge about that project than he had. He further admitted that Tocci and Bastidas were more experienced and had more knowledge about the projects than he had. Finally, he acknowledged that he had either no experience whatsoever or no meaningful experience working on any of the remaining projects. Wolenski's contention that he was as qualified to fill the position that Hughes received is insufficient to prove pretext. See Branson, 853 F.2d at 772 ("As courts are not free to second guess an employer's business judgment, this assertion [that plaintiff was equally or more qualified than the people retained] is insufficient to permit a finding of pretext."). See also Sanchez v. Phillip Morris Inc., 992 F.2d 244, 247-48 (10th Cir.1993); Fallis v. Kerr-McGee Corp., 944 F.2d 743, 747 (10th Cir.1991). Moreover, Wolenski demonstrated no direct evidence of age discrimination by Manville. He conceded that he had no evidence of any age bias by Dr. Michelsen. He produced no evidence of any other age discrimination by Manville. In addition, two of the three research technologists who were retained in the corporate R & D group were in their 50's, and Tocci was older than Wolenski.
 
 
 17
 Wolenski argues that he produced adequate evidence of pretext by showing that the average age of the corporate R & D group dropped ten years following the RIF. We are not persuaded by this argument for a variety of reasons. Wolenski did testify in his deposition that the average age of the unit dropped ten years following the RIF. He, however, failed to provide any specific facts for this conclusory statement. He made no effort to place this information into any meaningful context. In addition, although this evidence may arguably support an inference of discrimination to establish a prima facie case, it has no probative value on the issue of pretext here because the statistical sample is so small that it carries no probative force to show discrimination. Fallis, 944 F.2d at 746. In sum, this evidence was wholly inadequate to create a genuine issue of fact on pretext.
 
 
 18
 Wolenski has also suggested that the scope of the inquiry was erroneously limited to his immediate work unit. He argues that Manville had a policy of considering displaced workers in one group for positions in other groups. For several reasons, we find this matter is inadequate to raise an issue of fact for trial. First, there is no evidence in the record that Manville had such a policy. The only evidence of such a practice is a "conclusory statement" in an affidavit submitted by plaintiff that it was "standard Manville practice" to consider displaced workers for positions in other departments. The failure to present specific facts concerning this contention dooms it. Second, there is no evidence in the record that Manville failed to consider Wolenski for other positions. If such evidence exists, Wolenski has failed to identify it. Finally, Wolenski has failed to demonstrate that Manville used this policy, if one existed, to favor younger employees. There is no evidence that Manville utilized this practice for the benefit of younger employees and to the detriment of older employees.
 
 
 19
 Accordingly, we AFFIRM.
 
 
 
 *
 Honorable Richard D. Rogers, Senior District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 **
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470