**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 25 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MARY ELLEN KIRKLAND,

Plaintiff - Appellee,

v.

BAKER-HUGHES OILFIELD
OPERATIONS, INC., sued on original
petition as: Baker-Hughes, Inc., a
Delaware corporation d/b/a Centrilift,

Defendant - Appellant.

No. 98-5172
(D. Ct. No. 97-CV-142-BU)
(N.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **TACHA** , **BRISCOE** , and **ROGERS** ,† Circuit Judges.

Defendant-appellant Baker-Hughes Oilfield Operations, Inc. appeals the

district court's denial of its motion for judgment as a matter of law. We exercise

jurisdiction pursuant to 28 U.S.C. § 1291 and reverse.

I.

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

†The Honorable Richard D. Rogers, Senior District Judge for the District of
Kansas, sitting by designation.

By late 1993 or early 1994, defendant knew that its revenue was going to decline due to an anticipated drop in its export business with Russia. Defendant informed all of its departments that they had to decrease costs and expenses in order to maintain profitability and gave each department a cost reduction target. Ultimately, defendant determined that a reduction-in-force (RIF) was necessary. On April 22, 1994, defendant fired plaintiff-appellee Mary Ellen Kirkland as part of the RIF. At the time, she was fifty-eight years old. Kirkland filed suit, claiming that defendant discharged her in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a)(1).

The evidence at trial tended to establish the following facts. Kirkland worked for defendant from 1962-1968 and from 1975-1994. At the time of the RIF, she was an accounts receivable clerk in the accounting department. During her tenure with defendant, Kirkland never received a less than satisfactory performance appraisal and was never reprimanded. Carol Millett, one of Kirkland's supervisors, and Joe Mitcho, a vice president of human resources, both testified that Kirkland was doing a satisfactory job when she was fired. Sylvia Mitchell, one of Kirkland's co-workers, also testified that Kirkland was qualified for her job and could have been trained to do the accounting work that remained after the RIF.

Kirkland's 1990 performance appraisal states that she could perform some

of her manual tasks faster and more efficiently on a computer. The appraisal instructs Kirkland to take steps to obtain any necessary training. Kirkland's 1991 performance appraisal also indicates that she needed to develop ways to make her job more streamlined and efficient. Furthermore, in 1991, Kirkland made it her own goal to become more involved with the personal computer, WordPerfect and Lotus 1-2-3 so that she could become a more efficient employee.

At trial, Kirkland testified that she had no qualms about the computer and never refused computer training. Although she signed up for in-house computer training and asked numerous supervisors for computer training, Kirkland testified that she was unable to obtain it. Consequently, she asked other employees to help her learn and she taught herself. Along with her co-workers, Kirkland also spent approximately one hour obtaining certification to use a software application for accounting.

Kirkland admitted that she neither automated her manual tasks after the 1990 performance appraisal nor made any effort to learn computer skills on her own outside of work. While defendant offered only limited in-house computer training prior, it did support an education reimbursement program to encourage employees to seek outside training. Kirkland did not take advantage of this program. She did enroll in a Lotus 1-2-3 class at a vocational school but did not complete it because the material was too advanced for her.

At the time of the RIF, Pam Hoagland also worked in the accounting department as an accounts payable service center processor. A temporary agency hired Hoagland to work for defendant in September 1993. By December of 1993, defendant was behind in paying its invoices and hired Hoagland as a regular payroll employee to work in accounts payable. Eventually, Hoagland began training to do Kirkland's job. After defendant fired Kirkland, Hoagland assumed the accounts receivable position. Hoagland was 42 years old at the time.

Hoagland did not have a college degree or any formal accounting training. She had worked in a bank doing bookkeeping and balancing checkbooks and the bank's budget. She also had taken two computer classes at a state college and worked on a computer system at another company. Hoagland's 1994 performance appraisal indicated that, overall, she needed improvement, but also noted that she met expectations in automating procedures. Millett testified that it would have been unfair to give Hoagland a satisfactory review in 1994 because Hoagland was a new employee and she was still learning her job.

In making its RIF decisions, defendant retained the employees with the best qualifications to complete the remaining work. Seniority was considered only if two employees were equally qualified. Defendant's managers testified that they selected Kirkland for the RIF because she (1) failed to automate the manual functions of her job, (2) lacked the skills to handle the post-RIF computerization

of all accounting work, (3) was satisfied with the status quo and not interested in change, and (4) did not demonstrate a willingness to make her job more efficient. Kirkland testified that she believed she was fired because of her age. Rhonda Tygart, one of defendant's computer instructors, also testified that she believed Kirkland was fired due to her age.

Testimony further indicated that defendant retained Hoagland because (1) she could function in both accounts payable and employee receivables, (2) she showed both the willingness and the potential to do different jobs, and (3) she had experience with computers. After the RIF, Hoagland made the accounts receivable job more efficient by automating several tasks and eliminating redundant functions.

At the close of plaintiff's evidence, defendant moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a). The district court denied defendant's motion and the jury returned a verdict for plaintiff. In a post-trial motion, defendant moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b), and the district court again denied defendant's motion. Defendant filed a timely appeal.

## II.

We review de novo the denial of a judgment as a matter of law. Greene v. Safeway Stores, Inc., 98 F.3d 554, 557 (10th Cir. 1996). We "apply the same

legal standard as the district court and construe the evidence and inferences in the light most favorable to the nonmoving party without weighing the evidence, passing on the credibility of witnesses, or substituting our judgment for that of the jury." Id. Judgment as a matter of law is proper "only where the evidence and all inferences to be drawn therefrom are so clear that reasonable minds could not differ on the conclusion." Id. (internal quotation marks and citation omitted).

The ADEA provides in pertinent part that it is "unlawful for an employer . . . to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). We evaluate ADEA claims based on indirect evidence of discrimination under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1165 (10th Cir.), cert. denied, 525 U.S. 1054 (1998). To establish a prima facie case of age discrimination under the ADEA, a plaintiff who is discharged in a RIF must prove that (1) she is within the protected age group, (2) she was doing satisfactory work, (3) she was discharged despite the adequacy of her work, and (4) there is some evidence the employer intended to discriminate against her in reaching its RIF decision. Id. The fourth element is satisfied if the plaintiff "held a similar position to a younger retained employee." Id. at 1167.

If the plaintiff makes out her prima facie case, then she "creates a presumption of discriminatory intent that the defendant may rebut by asserting a

- 6 -

facially nondiscriminatory reason for the employee's termination." Id. at 1165. Once the defendant advances a legitimate reason for its decision to fire the plaintiff, the plaintiff can prevail only if she presents evidence that the defendant's proffered reason is pretextual. Id.

In this case, there is no question that Kirkland established the first three elements of her prima facie case: (1) she is a member of the protected age group, (2) members of management testified that she was doing satisfactory work when she was fired, and (3) defendant laid her off despite the adequacy of her work. In addition, Kirkland and Hoagland both worked in the accounting department, Hoagland was learning Kirkland's job at the time of the RIF, and Hoagland was younger than Kirkland. Thus, it appears that Kirkland held a similar position to a younger retained employee. We therefore will assume that Kirkland also satisfied the fourth element of her prima facie case.

However, "the existence of a prima facie case does not necessarily preclude judgment as a matter of law" against Kirkland. Doan v. Seagate Tech., Inc., 82 F.3d 974, 977 (10th Cir. 1996).

> [A]fter a full trial on the merits, the sequential analytical model adopted from McDonnell Douglas . . . drops out and we are left with the single overarching issue whether plaintiff adduced sufficient evidence to warrant a jury's determination that adverse employment action was taken against [her] on the basis of age.

Fallis v. Kerr-McGee Corp., 944 F.2d 743, 744 (10th Cir. 1991). Thus, the

verdict in this case can stand only if Kirkland presented enough evidence for a reasonable jury to conclude that age was the determinative factor in her discharge.

Kirkland contends that the evidence supports the jury's verdict because it shows that defendant conspired to replace her in the summer of 1993, hired Hoagland (her replacement) in the fall of 1993, and then used an unnecessary RIF to effectuate its scheme. She argues that the evidence proves she was doing a good job when she was laid off and that she was as qualified as Hoagland for the post-RIF accounts receivable position. Kirkland thus insists that a reasonable jury could infer that defendant fired her because of her age. We conclude, however, that Kirkland offered no credible evidence of age discrimination to support her conspiracy theory.

First, although Kirkland presented evidence that defendant held meetings in the summer of 1993, she offered no proof that defendant planned her termination and replacement at these meetings. Second, uncontroverted testimony at trial showed that the accounting department was behind in late 1993. Consequently, in December 1993, defendant converted Hoagland from a temporary employee to a regular payroll employee and placed her in the accounting department. Thus, Kirkland did not demonstrate that defendant hired Hoagland to replace her or that defendant was already planning to discharge her in a RIF when it hired Hoagland. See Doan, 82 F.3d at 977 (finding that pre-RIF hiring is not evidence that a RIF

"was merely a pretext for pruning away unwanted employees" where the defendant's managers were unaware of the upcoming RIF when they hired the new employees).

Third, the evidence showed that defendant's export business declined in late 1993 or early 1994 and, as a result, defendant experienced a drop in revenue. Eventually, defendant determined that a RIF was necessary. Kirkland challenged the necessity of the RIF by presenting evidence that defendant was financially healthy and profitable. As we have said before, "the wisdom of a RIF is not for a court or jury to decide. A RIF is a business decision, and the ADEA is not a vehicle for reviewing the propriety of business decisions." Id. (internal quotation marks and citation omitted). Accordingly, Kirkland's financial evidence is not probative.

Fourth, ample evidence demonstrates that defendant laid off Kirkland and retained Hoagland because defendant believed that Hoagland was more qualified to handle the post-RIF computerization of all accounting work. Specifically, Hoagland was multi-faceted, showed willingness to do different jobs, and had experience with computers. By contrast, Kirkland did not automate her manual tasks or complete outside computer training despite her 1990 and 1991 performance appraisals. The evidence thus showed that Kirkland did not have the necessary computer skills or the willingness to obtain those skills, and that

defendant therefore selected her for the RIF. We recognize that there may be a correlation between age and computer skills, but this does not mean that computer proficiency cannot be used as a RIF selection criterion.

Despite the evidence, Kirkland claims that a reasonable jury could have found that defendant violated the ADEA based on her own testimony and that of Rhonda Tygart, a computer instructor. Kirkland also relies on the testimony of Sylvia Mitchell and others that she was as qualified as Hoagland and trainable. However, even if the jury believed Kirkland's assessment of her own performance and the testimony of her co-workers, the jury was not free to conclude that defendant impermissibly discharged Kirkland absent any other evidence of age discrimination. Fallis, 944 F.2d at 747 (finding that the plaintiff's own testimony and that of his co-workers was not enough to support a jury verdict in his favor without additional evidence of age discrimination over and above his prima facie case); see also Furr v. Seagate Tech., Inc., 82 F.3d 980, 988 (10th Cir. 1996) ("It is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of his own relative performance.")

We have carefully reviewed the record in this case and construed the evidence and inferences in the light most favorable to Kirkland. We find that she has failed to produce evidence sufficient to demonstrate that defendant discriminated against her on the basis of age. We therefore hold that the district

- 10 -

court erred in denying defendant's motion for judgment as a matter of law.

Kirkland's request for appeal-related attorney fees is DENIED.

REVERSED and REMANDED for entry of judgment in defendant's favor.

ENTERED FOR THE COURT


Deanell Reece Tacha
Circuit Judge