**UNITED STATES COURT OF APPEALS**
**Tenth Circuit**
**Byron White United States Courthouse**
**1823 Stout Street**
**Denver, Colorado 80294**
**(303) 844-3157**

Patrick J. Fisher, Jr.                                                                                              Elisabeth A. Shumaker
Clerk                                                                                                                      Chief Deputy Clerk

July 20, 2000


**TO:** ALL RECIPIENTS OF THE OPINION

**RE:** 99-8011, *Martinez v. Wyoming*
Filed on July 19, 2000

The opinion filed in this matter contains a clerical error in the date filed stamp. The date stamp should read "Filed July 19, 2000" as opposed to "Filed December 10, 1996".

A corrected copy of the first page of the opinion is attached.

Sincerely,

Patrick Fisher, Clerk of Court


By:
Daniel R. Sosa, Jr.
Deputy Clerk

**PUBLISH**

**July 19, 2000**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

MICHAEL MARTINEZ,

     Plaintiff-Appellant,

v.

STATE OF WYOMING, Department
of Family Services,

     Defendant-Appellee.

Case No. 99-8011

---

**Appeal from the United States District Court
for the District of Wyoming
(D.C. No. 96-CV-296-D)**

---

Bernard Q. Phelan of Phelan-Watson Law Office, Cheyenne, Wyoming,
for Plaintiff-Appellant.

Francisco L. Romero, Assistant Attorney General (Gay Woodhouse,
Attorney General, and John W. Renneisen, Deputy Attorney General,
with him on the briefs) Cheyenne, Wyoming,for Defendant-Appellee.

---

Before **LUCERO**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge,
and **BROWN**, Senior District Judge.*

BROWN, Senior District Judge.

---

* Honorable Wesley E. Brown, Senior United States District Judge
for the District of Kansas, sitting by designation.

In this Title VII employment discrimination action under 42 U.S.C. §2000-3(a), plaintiff Michael Martinez appeals the district court's entry of summary judgment in favor of the defendant State of Wyoming, Department of Family Services. The court exercises appellate jurisdiction under the provisions of 28 U.S.C. §1291.

The case involves plaintiff's efforts to become a welfare worker at the Laramie County Office of the Wyoming Department of Family Services in 1991 and 1992. The issues presented in this appeal are whether plaintiff's charge of discrimination was timely and whether there is a genuine issue of material fact with regard to the issue of discrimination.

The district court found that plaintiff's claims of race and reverse gender discrimination, connected to his application for employment in 1991, were time barred under Title VII's requirement that charges be filed within 300 days following the date of alleged discrimination. With reference to the 1991 claim, the court further found that plaintiff's complaint concerning employment opportunities in 1992 did not present a "continuing course of conduct" which would revive the 1991 claim. The court also determined that plaintiff's evidence was not sufficient to establish a genuine issue as to pretext because there was an absence of evidence which would demonstrate that plaintiff was more qualified than those hired by the agency, and that statistical evidence was insufficient to establish questionable disparities in hiring decisions.

2

The background facts appear to be fairly stated in the order sustaining defendant's motion for summary judgment. Plaintiff is an Hispanic male and a high school graduate, who was honorably discharged from the United States Marines. He had completed a three-hour course in auto upholstery and had worked in his father's body shop. Plaintiff also had typing and computer experience.

Plaintiff applied for public assistance from the state of Wyoming. As a condition for such assistance, he enrolled in the "Wyoming Opportunities for Work" program. Beginning in January, 1991, plaintiff began work as a volunteer in the Wyoming Department of Family Services. This state program provided that a participating employer would hire a trained volunteer for an available position if he or she satisfactorily completed a work-experience program.

As a volunteer, plaintiff performed various clerical duties for the agency, preparing documents and helping applicants for public assistance complete their applications. Plaintiff did not make eligibility determinations, do computer work, verify information, calculate benefits, interview clients, or prepare correspondence, all of which are listed as some of the duties of an economic assistance specialist, the position he wanted.

When plaintiff first applied for a vacant position with the agency on May 22, 1991, he received a qualification notice and was placed on a list for three vacant positions. Sixteen candidates were interviewed for the three positions. In late June, 1991, plaintiff was interviewed by a three-member panel of supervisors

3

but was notified on June 28, 1991, that he had not been selected for any vacancy. A male applicant, Christopher Farris, and two females, Linda Archer and Judith Wininger, were chosen to fill the vacancies.

The district court found that Christopher Farris was one of the most qualified applicants with college education and "management potential." He also had computer training and experience. Linda Archer was also well qualified because of her work experience in the state workmen's compensation office where she evaluated claims for disability benefits, and she "interviewed very well." She had also calculated disability awards, prepared correspondence, had significant computer experience and several years of office experience. Judith Wininger was employed at the time of her interview as a home health aide for the agency where she documented cases and worked directly with clients. Ms. Wininger had also attended college for one year and had a computer course at a community college.

Plaintiff claims he was interviewed for two other vacancies in 1991--in the summer of 1991 and in October 1991--but there was no evidence as to who, if anyone was hired, the applicants who were interviewed, or information about the qualifications of those who were hired.

Plaintiff continued as a volunteer until December, 1991, or January, 1992, when his volunteer status was ended due to the program's time limitations. In April, 1992, at his request, plaintiff's name was added to another list as eligible for

4

vacancies. Fourteen names were on this list, and twelve applicants were interviewed. On April 30, 1992, plaintiff was given an interview but, on May 4, 1992, he was informed that he had not been selected. Susan Wood was hired for this 1992 vacancy, in part due to her mandatory preference status as a former state employee who had been separated due to a reduction in force. Ms. Wood also had 15 hours of college credits as well as typing and computer experience and other skills qualifying her for the position.

Plaintiff claimed that the defendant's reasons for not hiring him were a pretext for discrimination, and he believed that he was more qualified than those who were successful applicants. Accordingly, plaintiff filed a charge of discrimination with the EEOC on September 15, 1992, alleging discrimination for failure to hire him on May 4, 1992. He did not claim discrimination with regard to the 1991 position, and the EEOC investigation was limited to the 1992 interview exclusively. On August 21, 1996, the EEOC issued a dismissal, advising that it was unable to conclude that the state agency had violated federal law in its hiring practices.

Plaintiff filed this action pro se, complaining of discrimination in connection with his unsuccessful interview in May, 1991. Plaintiff's counsel filed an amended complaint alleging that defendant had discriminated against plaintiff by failing to hire him in 1991 and for a subsequent vacancy.[1]

---

[1] The amended complaint refers to Susan Wood in discussing the 1991 vacancies, but, as noted, Ms. Wood filled a vacancy in 1992.

5

In support of his claim in the district court, plaintiff presented statistical evidence that employees of the state agency were predominantly white and female. This evidence consisted of a 1994 computer printout which plaintiff stated in his affidavit had been obtained "from the EEOC." The district court found that there was no evidence of foundation or authenticity for this exhibit, that it pertained to the year 1994, and therefore was not probative of any issue before the court. Plaintiff also submitted a publication entitled "The Employment of Minorities and Women in Wyoming State Government," which the court found "to have little probative value in advancing plaintiff's contentions." In addition, plaintiff also claimed that an Hispanic male had applied for a promotion to a supervisory position with the agency "around 1991/92" but did not get the promotion and that, in this person's "speculative opinion," he was not chosen because he was male and Hispanic. Speculation, of course, does not suffice for evidence. See Doan v. Seagate Technology, Inc., 82 F. 3d 974, 977 (10th Cir. 1996), cert. den., 136 L.Ed. 2d 609 (1997). It also appeared that this person was in fact later promoted to a supervisory position by the same supervisor who had denied his previous application.

The district court found that plaintiff did not file with the EEOC within 300 days of the discrimination he alleged in his amended complaint. Plaintiff did not file until September 15, 1992, more than 300 days after the first refusal to hire him in

May, 1991. Since he was interviewed and not hired for a vacancy in 1992, the court found that there was at least one instance of the alleged discrimination within the filing date but further concluded that the latter date was not attributable to a "continuing course" of discrimination. The court noted evidence that plaintiff was aware of his rights when he first complained of alleged discrimination in 1991, but that he failed to follow through with any complaint he may have had concerning discrimination in 1991.

In the alternative, the court further found that defendant's reasons for not hiring plaintiff were not pretextual, since those chosen for the vacancies were clearly more qualified than plaintiff was for the positions that were available.

We review the district court's grant of summary judgment *de novo,* applying the same standard as the district court. In reviewing the record we must determine if genuine issues of material fact exist, when the evidence is construed in a light most favorable to a plaintiff who has opposed the motion for judgment. In this case, plaintiff may not rest on his pleadings, but must show evidence which would establish all elements necessary to his case. Rea v. Martin Marietta Corp. 29 F. 3d 1450, 1454 (10th Cir. 1994).

After a review of the record in this action, we determine that the district court properly found that plaintiff's claims of discrimination rising in 1991 were time barred, and that they could not be revived by application of the continuing course of discriminatory conduct doctrine used by courts to fashion remedies

7

and to determine damages.  See Furr v. AT&T Technologies, Inc., 824 F. 2d 1537, 1543 (10th Cir. 1987).

In Title VII actions, 42 U.S.C. §2000e-5(e) claims of discrimination must be filed with the EEOC or state agency within 300 days after an alleged discrimination occurs.  Martin v. Nannie and the Newborns, Inc., 3 F.3d 1410, 1414 (10th Cir. 1993).  This 300-day limitation applies in such states as Wyoming which have prohibited discrimination under §2000e-5. Wyo. Stat.Ann. §27-9-105. As noted above, charges filed by plaintiff relating to his 1991 claims of discrimination were not included in the formal charge which he made, and the district court correctly found that contentions regarding his 1991 interview were time barred under Title VII.

While a plaintiff may include allegations of discriminatory incidents which occurred outside the time limitations when other acts may provide evidence of a "continuing pattern of discrimination," this equitable doctrine is applied to determine a remedy and damages, and is not codified within the provisions of Title VII.  Furr v. AT & T Technologies, Inc., supra, 824 F.2d at 1543.  Before this equitable remedy is applied by the courts, two criteria must be met--there must be at least one occasion of discrimination occurring within the filing period, and earlier acts must not be "discrete unrelated acts" but must be part of a "continuing policy or practice" which includes an act within the statutory period.  In Mascheroni v. Board of Regents of Univ. of Cal., 28 F. 3d 1554, 1561 (10th Cir. 1994), this court determined

8

that three considerations are relevant to determine whether prior acts may be considered. First, the court considers whether the incidents were of the same type of discrimination; second, the frequency of the incidents; and third, whether the nature of the incidents should have made the employee aware of the need to assert his rights.

In this instance, the district court correctly found that the "continuing course of conduct" doctrine would not be applied because plaintiff's evidence was insufficient to establish the frequency and permanence of the acts since the 1991 and 1992 interviews were ten months apart. In addition, the district court noted plaintiff's own affidavit in which he admitted that he was "concerned in 1991," and that he was made aware at that time that he could file a discrimination complaint.[2]

In the district court, plaintiff attempted to show that the defendant's explanation for not hiring him was pretextual. In this respect, plaintiff submitted statistical and other evidence to support his theory that he was the most qualified candidate for the job openings. In our evaluation of this evidence, we must determine whether the suggested evidence could lead to a jury finding that defendant had discriminated in its employment

---

[2] In this appeal, plaintiff now claims that the interview session in 1991 consisted of three wrongs--one for each of the three hiring decisions made by defendant. This argument was not raised at the summary judgment hearing for consideration by the district court. Issues not ruled upon there will not be considered on appeal. See Tele-Communications, Inc. v. C.I.R., 104 F.3d 1229, 1233 (10th Cir. 1997), and Anaeme v. Diagnostek, Inc., 164 F.3d 1275, 1285 (10th Cir. 1999), cert. den. 145 L.Ed 2d 668.

9

decisions. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 36 L.Ed. 2d 668,679 (1973).

In approaching the question, we note that both parties agree that, for the purpose of a summary judgment motion, plaintiff has made a prima facie case with respect to his race claims, and the only remaining issue concerning race is whether plaintiff presented sufficient evidence to raise an inference of discrimination by showing that defendant's explanations for its hiring decisions were pretextual in nature.

With respect to the gender claims, plaintiff relied upon statistical data contained in report compiled and published by the Wyoming Advisory Council to the U. S. Commission on Civil Rights in 1994. (Appellee Supplemental Appendix at pp. 29-97) The district court "assumed without deciding" that the report's 1992 gender data was sufficient to establish a prima facie case of reverse gender discrimination under Notari v. Denver Water Dept., 971 F.2d 585, 589 (10th Cir. 1992), but it further held that such statistical evidence lacked probative weight to establish pretext for defendant's decision not to hire plaintiff.

Statistical evidence offered by a party must "cross a threshold of reliability before it can establish even a prima facie case of disparate (treatment)." Ortega v. Safeway Stores, Inc., 943 F. 2d 1230, 1243 (10th Cir. 1991)(quoting Allen v. Seidman, 881 F.2d at 378). In Doan v. Seagate Technology, Inc.,supra, 82 F.3d 974 at 979 (10th Cir. 1996), we had occasion to note that while statistical evidence may create an inference of

10

discrimination the evidence may be so flawed as to render it insufficient to raise a jury question:

> "Statistics taken in isolation are generally not probative of age discrimination" <u>Jones v. Unisys Corp.,</u> 54 F. 3d 624, 632 (10th Cir. 1995). In this case [plaintiff's] statistical evidence is flawed because it failed to compare similarly situated individuals and failed to eliminate nondiscriminatory reasons for the numerical disparities. . . . Statistical evidence which fails to properly take into account nondiscriminatory explanations does not permit an inference of pretext. <u>Rea v. Martin Marietta Corp.</u>, 29 F. 3d 1450, 1456 (10th Cir. 1994). (82 F. 3d at 979).

With reference to plaintiff's contentions concerning "standard deviation" figures in connection with the statistical report, the district court did consider the raw data which it contained and determined that it had little probative value for a number of reasons. These included the fact that the 1992 work force data had little value with respect to plaintiff's 1991 gender claims, and the 1993 data on minority employment was not probative of the 1991 race discrimination claims. In addition, the district court concluded that the 1992 and 1993 statistics did not eliminate nondiscriminatory explanations for disparate treatment since plaintiff and the applicants hired were not comparable individuals or similarly situated applicants. We agree with the district court's conclusion that the statistical evidence presented by plaintiff had too little probative value to raise a genuine issue of material fact from which a jury could infer discriminatory motive.

11

In this appeal, plaintiff claims that he did not have to prove that he was the most qualified candidate for a position in order to overcome a motion for summary judgment.  When an employer contends that a plaintiff was not as qualified as the successful candidates, pretext can be inferred from evidence that a plaintiff was in fact <u>more</u> qualified than those chosen.  <u>Rea</u>, <u>supra</u>, 29 F.3d at 1437. Here, the defendant's stated reasons for not hiring plaintiff were that he was not among the most qualified candidates for the open positions.  We will not restate at length the qualifications of the 1991 and 1992 successful applicants.  In 1991, the candidate Farris had more education than plaintiff; Ms. Archer had three years of relevant work experience determining compensation claims; and Ms. Wininger had nine years' experience in defendant's agency. In 1992, the successful candidate, Ms. Wood, had fifteen college credits, had previously worked for the State of Wyoming, and in addition was entitled to a preference in the hiring decision because she was a former state employee.

For the first time in this appeal, plaintiff contends that he too was entitled to a preference in the hiring process as a veteran.  Section §19-6-102 of Wyo. Stat. Ann. provides in pertinent part that:

> Section 4.  <u>Preference in Making Appointment.</u>
> From among those in the candidate group given final selection consideration, who are otherwise equally qualified, the appointing authority shall give preference <u>in the following order:</u>
>
> (a) Previous employees who have been separated due to a reduction in force;

12

> (b) War veterans who have been residents
> of the State for one (1) year immediately
> preceding appointment; . . . . (Emphasis
> supplied)(p. 28, Appellee's Supp. Appendix)

While the veteran's preference claim was mentioned in an amended complaint, plaintiff did not raise the issue in opposition to the motion for summary judgment. Since this issue was not presented to the district court for consideration, it may not now be reviewed on appeal. Bullington v. United Air Lines, Inc., 186 F.3d 1301, at 1311-1312; Tele-Communications, Inc. . C.I.R., supra, 104 F.3d at 1229; and Anaeme v. Diagnostek, Inc., supra, 164 F.3d 1275.[3]

While plaintiff continues to insist that he was the "most qualified" applicant for the agency positions, the evidence is to the contrary. Giving him the benefit of all favorable inferences, it is clear that plaintiff was, at best, qualified for the positions he sought. Since plaintiff failed to produce evidence that he was the better qualified candidate from among those hired, he failed to raise a genuine issue of material fact as to pretext on the part of defendant. Bullington v. United Air Lines, Inc., supra, 186 F.3d at 1317-1318, 1319.

After our review of the record in this case, we determine that even when the evidence is viewed in the light most favorable to the

---

[3] In the first place, we note that Ms. Wood was entitled to primary preference because she had lost her prior state employment due to a "reduction on force." It also appears that the state veteran's preference statute applies only to veterans of wars and conflicts enumerated in 38 U.S.C. §101. Wyo.Stat.Ann. §19-6-102; Pinher v. State, Dept. of Admin. & Inf. 866 P. 2d 1300, 1304 (Wyo. 1994). Plaintiff's military service was from 1977 through 1981, not a period covered by the preference.

plaintiff, he has failed to produce evidence that defendant discriminated on the basis of race or gender in its hiring practices.  Accordingly, the district court's grant of summary judgment in favor of defendant is AFFIRMED.